We hear argument next in number 2009-1150 Gleason Industrial v. United States. I take it that counsel for Applee, or Applee's, are going to be dividing their time. Mr. Drescher is going to take 10 minutes, Mr. Jaffe 5, is that correct? That's correct, your honor. All right. All right, well, Mr. Sjoberg, when you're ready. Good morning. May it please the court. My name is Will Sjoberg on behalf of Central Purchasing, LLC, and importer of hand trucks from the PRC. At least two of which are clearly outside the scope of the anti-dumping duty order, one of which is the reason we are here today. But we need not reach the merits because the CIT did not have jurisdiction to hear Gleason's appeal. Indeed, regardless of whether you consider 2637D to be jurisdictional, exhaustion of administrative remedies is a prerequisite to jurisdiction. Given Gleason's failure to exhaust, this court must dismiss, and this court must dismiss with prejudice. Can you tell me what the failure to exhaust consists of? It wasn't exactly clear to me what they should have done, in your view, to exhaust and fail to do. Yes, your honor. If you consider the United States' request for voluntary remand before the Court of International Trade, They said, we request a voluntary remand because Gleason only provided conclusory statements at the administrative stage. They only provided conclusory statements. They did not make an argument as to why the toe plate slides under a load. Well, can I ask, I'm not following. We're past the anti-dumping order, right? You're not saying that Gleason didn't exhaust anything, any requirements under the regs with respect to getting to the anti-dumping order initially? No, your honor. And then after the anti-dumping order, your client asks for a scope ruling? That's correct, your honor. When and what should Gleason have done with respect to that request for a scope ruling? Were you saying it didn't do what it had to do? Yes, your honor. We came in and we asked for a scope determination on two models of hand trials. Gleason had 66 days to put facts and argument on the record, stating why these two models of hand trials were outside the scope of the anti-dumping duty order. Gleason failed to do so. Well, they opposed and they put forward some information, but are you saying they failed to do so because what they did was insufficient or that they were precluded from doing any more later? No, what they did at the administrative stage was insufficient. They failed to exhaust it at the administrative stage, your honor. I guess maybe to make it clear for me, is there anything you can point to me in the regs or in the statute that says what the – Gleason's an interesting part here, right? That is correct, your honor. What they're supposed to do and when with respect to a request for a scope ruling? Your honor. I mean, they did oppose it. Yes, they did. And you're saying, but they didn't provide sufficient information? Yes, your honor. The statute 1516, I believe it's AA2, defines the record upon review. What the CIT is to review is the record, the administrative record. Gleason did not fill the administrative record with facts and argument for the CIT to review. There was nothing for them to review. As the United States said, Gleason only made a conclusory statement. They put a bookmark in there. They said, look, the toe plate doesn't slide under allowed. That's all. So you're saying, let's assume the interested party didn't even oppose it at all. Your side asks for a scope ruling. The government gives you a scope ruling. I don't see anything in the statute that would preclude Gleason as an interested party from going to the CIT and getting judicial review. What you're telling me seems to be that absolutely not, that the record is limited to whatever the interested party has put in. I'm sorry, your honor. I'm telling you that the statute says that the record is limited to whatever the interested party has put in. And put in when? Put in during the administrative stage. And you're saying the administrative stage is between the time that Central asks for a scope ruling and the time that the Commerce Department issues its scope ruling? Well, it's interesting that you should say that, your honor, because there is a question of what actually the record is supposed to contain, given Gleason's post-decision maneuvering. On one hand, when we filed a motion to supplement the administrative record with evidence of Gleason's post-decision maneuvering, the United States says it's limited to what happened at the administrative stage. That is the record. But then when they asked for a voluntary remand, they said, oh, Gleason came in and put all this new information on the record, and all these arguments were forced after the administrative stage was complete, and now we want a voluntary remand. Well, I submit to you we have to define the administrative record. Is it only what happened at the administrative stage, or does it include Gleason's post-decision maneuvering? I submit to you that it includes both. Well, I'm a little unclear. I mean, the Commerce Department issues its ruling. How is Gleason to know before the ruling is issued what it's going to set? In other words, how could it rely exclusively on whatever it put in, requesting the scope when the ruling had been requested, when they don't know the offshot, you know, what ultimately Commerce is going to determine? That's a good question, Your Honor. Gleason is the petitioner in this anti-dumping duty order. They filed the original petition. They prosecuted the original anti-dumping duty investigation, which led to an order. They created the scope of the anti-dumping duty order. The scope of the anti-dumping duty order contains only three characteristics. It contains a frame with two or more handles. It contains two or more wheels and a tow plate that slides under a load. Only three. It's not like Gleason didn't know about one of those characteristics. It's only three. Now, you have Gleason saying that, hey, this isn't like an administrative review or an anti-dumping duty investigation where you have a preliminary determination and a final determination. Gleason is correct. But anti-dumping duty administrative reviews and investigations, they're infinite permutations and combinations of what the Department of Commerce can come up with. Here you have three characteristics, three characteristics that Gleason itself came up with, and they failed to address one of those characteristics at the administrative stage. Why? I don't know. It's my position that Gleason slept on its rights. Now, let's talk about the statute in 2637D. This court's position in 2637D is jurisdictional. It is found that in the case Consolidated Bearings v. United States, JCM v. United States and ALZ Belgium v. United States, in Consolidated Bearings. Let me see. I'm familiar with that. I think we all are. The language in Consolidated Bearings. What about the language in Korrestal, at the end of the opinion in Korrestal, about the, well, the exhaustion, the application of exhaustion principles that's subject to the discretion of the judge of the Court of International Trade and where Congress has not clearly required exhaustion, sound judicial discretion governs, and that's with respect to the exhaustion requirement from this statute, I believe. Yes, Your Honor. Also in Korrestal, the court said there must be a strong contrary reason not to require exhaustion. Yeah, but that speaks to judicial discretion not to hard and fast congressionally mandated jurisdictional rules in the sense that we most strictly apply the term jurisdiction. Yes, Your Honor. So my question is why isn't this characterization sufficient to indicate that this is not a jurisdictional restriction? Yes, Your Honor. The statute says the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies. Right, where appropriate. Where appropriate. Which is presumably where the court concludes it is appropriate to do. That is correct, Your Honor. But in order to have an exception to jurisdiction, well, first, you only have four court-created exceptions to jurisdiction. Futility, pure question, law, clerical error, and contrary precedent. Well, presumably before the court created those four, there were none, and the court decided, well, here are four areas in which it's appropriate. Doesn't that indicate that Congress isn't drawing a hard and fast jurisdictional line here, but rather this is subject, as the statutory language seems to suggest, to the discretion of the court? I would point you to the word shall in the statute, and then I would also point you to a case that the United States and Gleason have cited, Carpenter Technology, at the CIT, where Judge Gordon has decided that 2637D is non-jurisdictional. That case relies heavily on a D.C. Circuit of Appeals case, Avocados Plus Incorporated v. Veneman. And in that case, the court distinguishes between jurisdictional and non-jurisdictional exhaustion. Non-jurisdictional exhaustion is judicially created, and it serves three purposes. It permits the agency to correct its errors, it permits the agency to apply its expertise, and it permits the agency to compile a record. Well, the agency compiled a record in our case. The agency made no error. It was Gleason that made an error. Gleason slept on its rights. Jurisdictional exhaustion, according to the D.C. Circuit, is non-jurisdictional and more. The statute must contain sweeping and direct language requiring exhaustion. Now, the D.C. Circuit cited as a jurisdictional exhaustion statute the Federal Power Act. And I will quote that to you right now. The Federal Power Act says, No objection to the order of the commission shall be considered by the court unless such objection shall have been urged before the commission in the application for here to be hearing. And here's the kicker, Your Honor. Unless there is reasonable ground for failure to do so. So it's the D.C. Circuit's position that there can be discretion in a jurisdictional exhaustion statute. And that is our position here. Courts, including the Supreme Court, have said that jurisdiction is a word with many, too many meanings. And that seems to be the case here, that we're applying the term jurisdiction to animals that may not all be in the strict sense of jurisdictional, i.e. disabling of a court to take any action whatsoever. Because this doesn't strike me as being, this statute does not strike me as disabling the court from taking action. Indeed, it authorizes the court to take action in appropriate cases. Appropriate as defined by the court. Yes, Your Honor. I guess I go back to the statute 19-15-16-A, 2B-6, where it talks about that the CIT shall review scope determinations. Where there's got to be a record to review. Otherwise, the court wouldn't have jurisdiction.  But, counsel, what about, I mean, I know we're talking about chorus and consolidated bearings, but going all the way back to 1986, it seems we've got precedent in U.S. V. Priority Products, which talks about exhaustion of administrative remedies, and CIT is not, strictly speaking, a jurisdictional requirement, and hence the court may waive. And the court did go on to agree that it was waived in this case. That is correct, Your Honor. In that case, the issue is whether the United States exhausted their administrative remedies. They did not name an individual in an enforcement action under 1592. Instead, they named the corporation. In that case, ultimately, the court said this is not a subject matter jurisdiction case. It is a personal jurisdiction case. So I would say that that case is distinguished on its facts. Very well. Why don't we save the remainder of your rebuttal time, unless you wanted to continue? Very well. Very well. Mr. Drescher, I guess you're first up. The court is absolutely correct. Jurisdiction is a word with many meanings, and exhaustion has both a jurisdictional and a non-jurisdictional component. There is no dispute that the Court of International Trade has discretion pursuant to 2637D to determine whether or not exhaustion is required in a context such as this, a non-jurisdictional context. It's important to note what happened below. Central Purchasing does not contend that Gleeson failed to raise an issue below, the general issue. They concede that. Central Purchasing contends that they failed to raise a subsidiary issue, and that's exactly why this case falls within the discretion of the Court of International Trade. Did the Court of International Trade actually explain that it was exercising its discretion in this case? Your Honor, the Court of International Trade, in its second decision in a footnote, stated that the exhaustion argument brought by Central Purchasing was moot, and that's the extent of the opinion with respect to exhaustion. You read that as being because they decided to remand it at the request of the government, and the exhaustion question is moot. Correct, Your Honor. The exhaustion argument actually wasn't brought initially in Gleeson 1 at the time the voluntary remand decision was issued. The decision in Gleeson 2 is where it was addressed. So it is our position that the Court, for a number of reasons, did not abuse its discretion in granting the remand, and in ruling that the exhaustion argument was moot. What is your view on whether or not there was an exhaustion problem, and what requirement there was in the statute of the regulations that Gleeson had to meet and didn't? Your Honor, if the question is whether or not Gleeson participated below to a level sufficient… When you're saying below, are we done with the anti-dumping order and we're talking about the scope ruling, right? Correct, Your Honor. If Your Honor's question is did Gleeson participate below so as to not have standing, so as to preclude jurisdiction, the answer is no. The answer is no. The position… We never saw a basis to dismiss for lack of jurisdiction at the Court of International Trade, and that would be the jurisdictional exhaustion component of it. I'm confused. I understood opposing counsel to suggest that Gleeson simply didn't introduce any particularized evidence or testimony on one of the three things in the scope ruling, and that it's a matter he claimed of exhaustion because the CIT shouldn't have had the authority then to remand back for him to introduce stuff that he had the… for them to introduce things they had the opportunity to do. They failed to meet their burden of proof. You don't get do-overs. That's how I understand his exhaustion argument to be framed. So see if you could explain why that's not accurate. It's not accurate because when Central Purchasing first raised… asked for scope ruling, they stated in their scope ruling request simply that the carts did not have a projecting tow plate. That was the extent of the factual record, so to speak, brought by Central Purchasing at that time. Simply a statement that said these carts don't have a projecting tow plate. In response, Gleeson stated they do, and they are capable of being slid under a load. Now, it was within the Court of International Trade's judge's discretion to determine whether or not those issues, raised as they were, triggered the exhaustion requirement. And in this case, the judge ruled correctly, did not abuse his discretion in determining that the issue was moved. So given the allegations made by Central Purchasing as to what these carts are and Gleeson's response. I have the same confusion, or maybe more probably, than Judge Moore. Is it the government's position that if Gleeson had remained completely silent and the scope ruling had come out as it did, and we're talking about the first round here, and then Gleeson had gone into the CIT and said, we don't like this, that there would have been a standing issue jurisdictional bar? If they did not raise the issue, initially, yes, Your Honor. But you're saying that this converts from a jurisdictional bar, which you referred to, I think, you alluded to as a standing issue. It's the level of participation below, Your Honor. And where does that come from, by the way? Well, pursuant to 28 U.S.C. 2631, Your Honor, a party has to be a party to a proceeding. OK. So they would not be a party to the administrative proceeding. Correct, Your Honor. And therefore, would not have standing under the statute to proceed. Correct, Your Honor. OK. But because they put their oar in the water, even though not very deep, they are deemed to have party status. And that gets them into the court. And your position at that point is that the court then has an essentially free hand, short of bad faith or manipulation, to say, when the government comes in and says, we need to flesh this out some more, the court is perfectly free to say, sure, go to it. Yes, Your Honor. OK. Our position is that, yes, if a party were to come in at the Court of International Trade and raise an argument that was never raised below, they would be required to exhaust their remedies. That's not what happened here. But the other side seems to be, as I understood their response, was that Gleeson not only had to put its oar in the water by staking out a position, but that Gleeson would then be tied to the administrative record below on the scope ruling. And the government's answer is? Well, the answer, Your Honor, is, first of all, central purchasing, the level of proof put forth by central purchasing, the information, the administrative record submitted is quite similar to the information submitted by Gleeson, number one. You mean the level of detail? Exactly. Exactly, Your Honor. So it is opposition, Your Honor, that given the facts of this case, given that the general issue was raised below by Gleeson, the Court of International Trade did not abuse its discretion in ruling that the exhaustion argument was moot. I'm sorry, go ahead. Are you saying that if, suppose that central purchasing had made a thorough and elaborate showing and Gleeson's presentation had been quite truncated, is there a different outcome? No, Your Honor. No, Your Honor. We're still in the area of non-jurisdictional exhaustion. It's up to the Court of International Trade. Essentially an unrestricted discretion by the court to send the case back on request, right? No, Your Honor. Your Honor, the position we have taken in this court and the position we continue to take is that exhaustion ought to be strictly applied. No question about that. But the issue here in this case is did the Court of International Trade abuse its discretion? And there's no debate. That's the question I was getting at. Once the court decides it wants to exercise its discretion, then you're saying that discretion is extremely broad at that point. The court has to articulate, there has to be justification for discretion, and in this case there were numerous reasons why we believe the court did not abuse the discretion. You're telling us, though, the Court of International Trade didn't. I beg your pardon? You're telling us the numerous reasons you think that they would be within their power to exercise their discretion, but they didn't tell us any of those reasons. That's correct, Your Honor. That's correct. So how do we review in that situation whether they properly exercised discretion? I mean, they said it was moot. We don't need to do it, reach the issue now. I mean, moot isn't very satisfying. Suppose I thought they were wrong. Well, I think there are a number of factors this court should look at in looking at that decision, and some of them have already been raised here. Number one, the fact that central purchasing does not dispute that Gleeson raised the general issue. Number two, the nature of the proceeding below. There was no preliminary ruling from commerce in this proceeding. This scope of the proceeding is a less formal proceeding in a shorter time frame, and this court ought to look at that. Furthermore, central purchasing did not raise the exhaustion issue initially. So given those facts... What should they have done if they were feeling aggrieved by the remand? What procedural course would have been open to them? Was that an appealable order in the government's view? The remand decision? Mm-hmm. The court retained jurisdiction of the case. The answer is no. So they really couldn't do anything. You want them to raise it earlier, but... They couldn't really raise it. I can't speak for why central purchasing did what it did at the time... Well, apparently your view is as a legal matter they would have been barred from doing anything else other than just waiting for their first chance later. That's not the only factor, Your Honor, that leads us to believe the court did not abuse its discretion below. The nature of the proceeding, the fact that Gleeson did raise the general issue, the decisions from this court that give the Court of International Trade discretion to rule in such circumstances. And we know from this court's decisions and the decisions from the Court of International Trade that where the government does request voluntary remand, that that actually meets one of the functional purposes of exhaustion. In fact, by permitting the remand, the exhaustion purposes in this case were furthered. The agency was allowed to apply its expertise. The record was further developed. Those are additional factors that lead to the conclusion that the Court of International Trade did not abuse its discretion. Very well. I think we'd better stop there and give Mr. Jaffe an opportunity to speak because we've run over, actually, all the time. But we'll restore some time to Mr. Schover to even it out. Mr. Jaffe. Thank you. Good morning. The jurisdiction argument, the court was exactly right below that it was moot. You have to remember there's another decision here. We have a decision by the Commerce Department that the particular hand truck is within the scope of the order. And I think it's important to acknowledge that what we have here is special expertise of the agency. Well, since you're arguing that it was moot and it was correct to find it moot, then you have to accept, I guess, arguendo that it was wrong. Arguendo. And even if wrong, it's moot. Therefore, nothing to be done about it, right? I'm sorry. What was wrong? The remand. No, I'm saying the remand was correct. I understand. But what I'm saying is you're saying you start off with the argument that, well, the whole question of whether the remand was right or not is moot, right? That's your first point to us. Again, I'm not too sure I understand. I don't think the remand was moot. I think the remand. The question of whether the remand was appropriate or not. I thought your argument started out saying that is a moot matter. No, my argument is that the court was correct in ruling that the exhaustion of administrative argument made by central purchasing was moot, was a correct statement. The reason is because, of course, the exhaustion of the argument is non-jurisdictional. Right. It had to be raised when the government requested the remand. They didn't raise it then. The government took the case back, has complete jurisdiction. The Department of Commerce has complete jurisdiction over the case, and within that jurisdiction, develops the record and says, no, this particular hand truck is within the scope of the order. And at that particular point, when it goes back up to the court to decide whether Commerce's decision was based upon substantial evidence, that's the first time that central purchasing raised the exhaustion argument. So I ask you the same question I ask your co-counsel. When should they have raised it instead of when they did? They should have raised it when the Justice Department requested the remand. And your position is that would be an appealable order, the remand order? Yes. They should have included it. So you part company with your co-counsel on that. Yes, because the judgment of the decision of the court, the first decision and the second decision are all part of here, and they could have appealed that. They didn't. They could have appealed at the time of the remand. They could have appealed now, and I think they could have requested an interlocutory appeal at the time of the remand as well, and they didn't. I think the key here is that we have a decision that this decision, if you go back to this particular decision, what we're talking here is it's totally a waste of time, really. Think about it. The Commerce Department has made a decision. We've always talked about the expertise of the department and how the court recognizes the expertise of the department, especially when it comes to factual situation. And what they're trying to do here by bringing up this exhaustion argument is saying, well, wipe that decision off the planet Earth. It doesn't exist. Well, the department, if you wipe it off the planet Earth, utilizing this legal argument of exhaustion, where are you then? Where are you? You're back at the beginning. The department can, on its own basis, bring up the case again. We could raise another request for scope review, arguing that it falls within the scope and, therefore, they should reverse. Substantial evidence of the record. The department wastes its time, again, going through this entire determination. They appeal, and the Court of International Trade has to go through the decision again. It has to come up to this court again. It's a waste of judicial resources, a waste of administrative resources. Also, as to your question about what we had to do below. Remember, this is a very short proceeding. If you look at chorus, you'll see specifically on page 1379 of that decision that it points that the exhaustion requirement is also a creature. Not only is it a creature of the court decision, but it's a requirement explicitly imposed by the agency as a prerequisite for judicial review. But not in this case. Why is it in chorus? Because there's a preliminary determination by the department. That's where exhaustion. You have to be able to exhaust your administrative remedy when there's a preliminary determination. You have to see what the agency is going to do. Here, they're the movement. They're bringing the case. They're arguing that it's outside. We responded to their papers, and that was it. At that particular point, there's no preliminary determination. You had to come in and respond. You just didn't have to give any substance to your response. In order to seek judicial review subsequently, you had to at least come in and say, no, we disagree. If you look at our response. Can you answer the question? I'm sorry. Is it your view that at least to the extent there's an exhaustion requirement, it at least consists of your coming in and objecting? Absolutely. I agree fully with that. But you're saying that it doesn't go beyond that, or that it's based on what they put forth? It's based on what they put forth. We responded to what they put forth. We were not supposed to anticipate that the department was supposed to come up with a totally different decision, not based upon what they put forth. They said it was, we don't have a projecting edge. We responded to that. The question is, the department came out with a totally different decision, not based upon the projecting edge. It said it didn't slide under. And if there was a preliminary determination to this, and we did not object to that in a case brief, then you're right. We would not have exhausted our administrative remedy. What if there was a scope inquiry? Is that different than a preliminary determination? There is a scope inquiry that they have to do in which they gather additional facts. It's a much longer proceeding. I think it's about 120 days. In this particular case, they did not initiate a much more extensive scope inquiry. In that case, there would have been facts gathering, everything like that, a preliminary determination. And, yes, if there were briefs in response to that preliminary determination, we would have had to exhaust our administrative remedies here. Here, there is no ability for us to actually understand what the Department of Commerce was going to rule and to exhaust our administrative remedies by making arguments contrary to saying, no, your preliminary determination is wrong. Thank you. Thank you. Mr. Joberg, we'll give you an extra, let's give you an extra four minutes on your rebuttal. Thank you, Your Honor. I'd like to make four or five points. The first one is, Central Perks, excuse me, Gleason says that they addressed a general issue. And Rowan Polnack in this court, this court said stating a general issue is not enough. Also, you have the United States. It's not enough for what? Not enough for exhaustion, Your Honor. For exhaustion, but enough, I take it, to become a party for purposes of standing. I would say that, that's a good question, Your Honor. I would say, yes, sir, yes, Your Honor. I think it would be enough to get standing because you can say you participated below. Now, the big question is, when we should have addressed the exhaustion issue. It's the position of the United States and Gleason that we should have done it when the United States requested a voluntary remand. After the United States requested a voluntary remand, I personally was down at the Department of Commerce and found the ex parte memo. Only later did I discover the post request for reconsideration. Considering the ex parte memo, the post request for reconsideration, and the United States request for voluntary remand, all of those culminated into an exhaustion argument. I did not have the opportunity to put forth the exhaustion argument until all of those documents came to light. How does the ex parte communications affect the exhaustion issue? Thank you, Your Honor. The ex parte memo describes a meeting between Gleason and the United States. I know that, yeah. Wherein the issue of whether the tow plate slides under a load for purposes of moving and lifting the load. The post request for reconsideration took four block quotes out of the final determination, final scope determination, and addressed each one of those four block quotes. The voluntary request for remand, the United States response to Gleason's 56.2 motion, used those same block quotes and elaborated on them. So basically what happened was Gleason failed at the administrative stage. They failed after their ex parte meeting. They failed on their post request for reconsideration. I guess the fourth chance was the charm because they ultimately prevailed and got the United States to request a voluntary remand where the record was reopened and Gleason was finally allowed to put all these facts and arguments on the record. It was not until after the remand that we were able to make this argument. Gleason talks about, and the United States talk about, the fact that we did not put a lot of facts on the records in our scope requests. With due respect, your honors, our client came in pro se. They are not a sophisticated law firm. Gleason is. Gleason knows the three characteristics of its own anti-dumping duty order. There's only three. Gleason failed to address one of them. And you're right, your honor, the CIT did not articulate any reason for its discretion in ruling the exhaustion issue moved. We don't have the benefit of that. We don't know. It is our position that the CIT did not have jurisdiction. Without jurisdiction, the CIT has no power to do anything but dismiss. If the CIT did have jurisdiction in the narrow and technical and actually appropriate sense of the word, is there anything wrong, and this is not just limited to this precise context, but just generally as a matter of administrative law, is there anything wrong with an agency whose ruling decision action has been challenged in saying to a court where the challenge has been filed, you know what, after seeing the complaint that was filed in an ABA review proceeding, we're now very concerned that we may have gotten it wrong. And we want to take another shot at this. So please send it back to us rather than you going through the exercise of having to decide whether what we did is right or wrong when we haven't put our best foot forward. I think that an argument could be made there, your honor. But we don't have that here. We have an ex parte memorandum. We have a post decision request for reconsideration. And we have the United States making that request. So it's not just the isolated request for voluntary remand that we have on the record, your honor. And by the way, it's interesting how those documents got on the record. I filed a motion to supplement. The United States and Gleason argued in opposition to that request. They said all you have is the record. Anything that happened post decision is not on the record. And yet the United States requested their remand on evidence outside the record, based on the ex parte memo and based on the post request for reconsideration. So the United States can't have it both ways. You refer to this ex parte. Is there anything inappropriate about a party with an interest in an administrative action contacting the agency and asking for an opportunity to be heard without the presence of some opposing party? Is that clear in this context that that's unlawful or improper? Well, as I said in my brief, your honor, that a meeting by itself is not unlawful. Right. The Gleason's I've attended many of those kinds of meetings. And we don't necessarily, we wouldn't necessarily, not as a judge, but when I was in the government, it wasn't unusual for somebody to say we'd like to give you the benefit of our thoughts on this matter. And they wouldn't bring their opposing counsel in. It's Opposing counsel will come the next week. There's nothing wrong with that, right? No, sir. No, sir, your honor. And I believe it's Roses versus United States, a case that was cited, I believe, by the United States on the issue of governmental good faith. In that case, the United States received a petition on an anti-dumping duty petition on Roses from Columbia. The Columbians then came into the United States Department of Commerce on a full court press. I believe it was the government. I believe it was the industry and everybody. The government did not initiate the case. This court found the Department of Commerce's actions to be unlawful. On the ground that it was It made an ex parte meeting and unduly influenced the United States. It's not so much the meeting that is unlawful, your honor. It's the fact that it had an effect. So a meeting that is useless is okay, but a meeting that actually contributes something significant to the process is not? Is that? That's pretty close, your honor. Yes, sir. Very well. Thank you, Mr. Schoberg. And thanks to all counsel. The case is submitted.